## BURNETT *vs.* THE STATE.

[INDICTMENT FOR GAMING.]

1. *Sufficiency of indictment.*—An indictment for gaming, in the general form given in the appendix to the Code, (p. 707, No. 70,) is sufficient, because it

Burnett v. The State.

pursues the prescribed form, although it charges that the gaming was (*inter alia*,) "at an outhouse *where people resort.*"

2. *Magistrate's office public house.*—The office of a justice of the peace is a "public house," within the meaning of the statute against gaming.

3. *House prima facie entirety.*—Where a house consists of two rooms, front and back, which are connected by an open space intended for a door, and the front room is used as a magistrate's office, the back room is also within the prohibition of the statute, although only used by the partners of a dissolved firm for the occasional settlement of their outstanding accounts.

From the Circuit Court of Conecuh.

Tried before the Hon. ANDREW B. MOORE.

THE indictment in this case was in the general form prescribed by the Code, page 707, No. 70. The defendant demurred to it, on the ground that the outhouse, at which the playing was alleged to have occurred, "was only charged to be 'an outhouse where people resort' at the time of the finding of the indictment, and not at the time of the alleged playing;" but his demurrer was overruled.

The evidence adduced on the trial, is thus stated in the bill of exceptions: "The testimony showed, that the defendant played at cards, within twelve months before the finding of the indictment, in a house located in the village of Sparta in said county, which had two rooms; one fronting on the street, with one door and window, and the other a back room. The front room of said house was used by a justice of the peace, for the purpose of keeping his docket and papers; but he had not held court in said room, for more than twelve months before the playing took place. When persons came to settle cases, he took them into that room, and settlements were there made.— The back room of said house was connected with the front by a door, to which there was no shutter, and was used only for the purpose of keeping the old account-books of the firm of Robinson & Pettibone, merchants, who had done business in another house in said village about two years before the playing took place. It was further proved, that one of the partners of said firm usually attended the sessions of the circuit court, and, when necessary, used said back room in settling the outstanding accounts of the firm, and, in doing so, at times invited their debtors

to said back room; that one of said partners visited Sparta once in two months, and at public gatherings there, and at such times stayed a day or two, and invited debtors to said back room for settlement, and used it as the place of settling said accounts. The playing by the prisoner took place in said back room, at a time when there was no court or public gathering, and when neither partner of said firm was in Sparta; the front door and window were both closed and locked, and no other person than the four or five who were playing, and who went by invitation from one who had the key of said house, was permitted to go into either room; and it was further proved, that no person could, by passing the street or other side of the house, have seen them playing."

Upon this evidence, the court charged the jury, in effect, that if they believed it they must the defendant guilty of playing cards in a public house; and to this charge the defendant excepted.

The overruling of the demurrer to the indictment, and the charge of the court, are the matters now assigned as error.

WATTS, JUDGE & JACKSON, for the prisoner.

M. A. BALDWIN, Attorney-General, contra.

RICE, C. J.—We hold the indictment sufficient, upon the single ground, that it is in the form prescribed in the Code.—Noles v. The State, 24 Ala. R. 672; Elam v. The State, 26 Ala. R. 48; Mayo v. The State, at present term.

A justice's office, like a register's office, is a "public house," within the meaning of section 3243 of the Code. The reason is, that by the very nature of the business to which it is appropriated, every person who has, or desires to have, any official transaction with such officer, or who has any interest in examining his official books, is, in legal contemplation, invited or licensed to go to his office. In no just sense, can such office be called a private house. Arnold v. The State, 29 Ala. R. 46; Huffman v. The State, 29 Ala. R. 40.

As the front room of the house mentioned in the evi-

dence, and in the charge in this case, is within the prohibition of section 3243 of the Code, the back room *prima facie* partakes of its character, and is also within the prohibition, unless the proof shows that it was so disconnected from the front room, by an appropriation to a distinct and separate use, as to make it, in law, as separate and distinct from the front room, as if the two rooms were, in fact, two distinct houses. Under our former decisions, it is clear that no such disconnection is proved in this case. See cases cited *supra*.

This case is unlike Dale v. The State, 27 Ala. R. 31. In that case, the playing was shown to have occurred in a room *rented and occupied* by one person for a sleeping apartment, in the second story of a house; and we held, that the fact that the first story was used by *another person* for the sale of vinous and spirituous liquors, did not, of itself, make the part which was appropriated to such separate purpose partake of its character, so as to warrant a conviction under the section of the Code above cited.— The disconnection in that case was clearly proved, and the decision was correct upon the facts. But here no such disconnection is proved.

The charge of the court below is free from error, and the judgment is affirmed.